Hearing Date:  **August 26, 2021, at 10:00 a.m. (ET)**

**COLE SCHOTZ P.C.**
Michael D. Sirota
Mark Tsukerman
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
(212) 752-8000
(212) 752-8393 Facsimile

*Counsel to David M. Repetto, as Court Appointed*
*Administrator of the Estate of Rhoda Crane*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>TREASURE AND GEMS, LTD.,<br><br>                    Debtor. | Chapter 11<br><br>Case No. 21-11474 (MG) |

**DAVID M. REPETTO'S OBJECTION TO THE DEBTOR'S**
**PUPORTED MOTION FOR INTERIM AND FINAL ORDERS**
**AUTHORIZING THE DEBTOR'S USE OF CASH COLLATERAL PURSUANT**
**TO 11 U.S.C. §§ 361 AND 363 AND GRANTING OTHER RELATED RELIEF**

David M. Repetto  (the "**Administrator**"), as the as the court appointed administrator of the estate of Rhoda Crane in the action pending before the Honorable James J. DeLuca, JSC, of the Superior Court of New Jersey, Chancery Division, Probate Part (the "**NJ Probate Court**"), styled *In re Estate of Rhoda Crane, Deceased*, Docket No. P-029-21 (the "**NJ Probate Action**"), by and through his undersigned attorneys, hereby files this objection (the "**Objection**") to the *Application in Support of Debtor's Motion for an Interim and Final Order Authorizing the Debtor's Use of Cash Collateral Pursuant to 11 U.S.C. §§ 361 and 363, and Granting Other Related Relief* [Docket No. 6] (the "**Motion**") purportedly filed on behalf of Treasures and Gems, Ltd. ("**T&G**" or the "**Debtor**"), and respectfully represents as follows:

## INTRODUCTION

1.  The Debtor currently is the subject an active and contentious litigation before the NJ Probate Court in connection with the administration of estate of Rhoda Crane ("**Rhoda**").[1] The NJ Probate Court is presiding over, among other issues, Michael's and Jacqueline's competing claims of ownership of the Debtor and, consequently, the management and disposition of the Debtor's assets. As briefly described below – just two weeks ago – the NJ Probate Court issued an order and made rulings stripping Michael of any authority to manage the Debtor or act on its behalf and enjoining him from doing so. A week later, he filed the Chapter 11 Petition. But the NJ Probate Court charged the Administrator as the only person authorized to act on the Debtor's behalf and manage its assets pending further proceedings.

2.  The Debtor's chapter 11 filing and the instant Motion represent (a) an *unauthorized* attempt by Michael to act on behalf of the Debtor and manage its assets and (b) a *flagrant* violation of, and attempt to collaterally attack, the NJ Probate Court's rulings and orders. Through the Motion, Michael (while purporting to act on the Debtor's behalf and in knowing violation of the NJ Probate Court's orders) has requested that this Court issue an emergency order – on three days' notice – that would directly contradict the NJ Probate Court's orders and usurp its jurisdiction over matters pertaining to the administration of Rhoda's estate.

3.  A brief summary of the background facts, which are sorely missing from the chapter 11 pleadings, is set forth below.

---

[1] The individuals in the Crane family are defined herein by their first names solely for sake of clarity and to avoid confusion. Rhoda was Michael Crane's ("**Michael**") and Jacqueline Crane's ("**Jacqueline**") aunt. Michael and Jacqueline are brother and sister. Their mother (Rhoda's sister) was Joyce Crane ("**Joyce**"), who is deceased.

2

**BACKGROUND**

4.     Michael and Jacqueline's aunt, Rhoda, died on July 5, 2020, and their mother, Joyce, died on October 9, 2020. Rhoda and Joyce were New Jersey residents at the time of their deaths.

5.     On December 28, 2020, Michael commenced a quite title action (the "**NY Action**") in the New York Supreme Court (the "**NY State Court**") on behalf of himself and T&G against Jacqueline and others, seeking a determination that Michael was the sole owner and CEO of T&G, which owns the building located at 250 East 90th Street, New York, NY (the "**Property**"). Michael alleged, among other things, that Rhoda transferred her majority shares in T&G to Michael by *inter vivos* gift in June of 2020, at which time he became the sole owner of the company. Further, Michael asserted that Jacqueline tortiously interfered with Michael's management of the Property.

6.     On January 13, 2021, Jacqueline, who was named as the alternate executor under both Rhoda's and Joyce's wills, commenced the NJ Probate Action in connection with Rhoda's estate. In the NJ Probate Action, Jacqueline disputes that Rhoda gifted her shares in T&G to Michael before she died and alleges, *inter alia*, that Michael defrauded Jacqueline from her right, title and interest in the Property and the rent derived therefrom. The NJ Probate Court is presiding over, among other issues, the disputed ownership and control of the Debtor, the disposition of the Property, and whether the shares in the Debtor were transferred by Rhoda to Michael. A trial on these issues in the NJ Probate Action is scheduled for December 6, 2021.

7.     On January 25, 2021, Michael and Jacqueline entered into a Stipulation and Order (the "**January 25 Stipulation**") resolving Michael's application in the NY Action for a temporary restraining order seeking to "preserve the status quo" with respect to the management

3

of the Property. The January 25 Stipulation provided, among other things, that Michael would continue to manage the Property, but had to direct tenants to make rent payable to T&G, deposit rents into T&G's accounts, and provide Jacqueline with monthly income and expense reports and details concerning T&G's bank accounts. Furthermore, Michael was enjoined from selling the Property, but was permitted to mortgage the Property upon notice to Jaqueline, if he determined in the exercise of his management that the mortgage proceeds were useful or necessary.[2]

8.  On January 26, 2021, the NJ Probate Court entered an Order (the "**January 26 Order**") which, among other things, appointed the Administrator as temporary administrator of Rhoda's estate and resolved a competing application for a temporary restraining order that was filed by Jacqueline in that court, based in part on the entry of the January 25 Stipulation in the NY Action.

9.  On April 23, 2021, the NJ Probate Court issued a decision and order denying Michael's motion to dismiss or stay the NJ Probate Action, and ruling that the NJ Probate Action should *not* defer to the NY State Court with respect to overlapping issues raised in both actions. Judge DeLuca explained that:

> although there "is no dispute that the [Property] is owned by [T&G] . . . the dispute between the parties relates to whether the [property is] . . . part of Decedent's Estate through Rhoda's interest in [T&G] . . . or whether Michael is the sole owner of the [property] through his interest in [T&G]. The New York courts are presently presented with questions related to the *inter vivos* transfers made by Decedent in the months prior to her death and whether [Rhoda's] 2017 Trust is the product of fraud and undue influence. Candidly, public policy of the State [of New Jersey] requires that such questions be decided by this court in this proceeding consistent with this court's jurisdiction over the administration of Decedent's Estate. Thus, the court properly exercises its jurisdiction over said questions. . . .

---

[2] Jacqueline, on the other hand, was required to refrain from taking certain actions, including, but not limited to, collecting any rents from the Property and making representations to tenants or others that she owns the Property and has authority to act on the T&G's behalf.

4

> If this court finds that Michael committed acts of fraud and undue influence, [Rhoda's] 2017 Trust and the *inter vivos* transfers are voided and set aside and [Rhoda's] 1999 Trust governs. New York does not possess a strong public policy in ensuring the administration of a New Jersey domiciliary's estate. Indeed, only New Jersey can exercise such jurisdiction, and thus it must.

10.   On July 23, 2021, the NY State Court entered a decision and order dismissing the NY Action based on principals of comity articulated by NJ Probate Court in its April 23 decision. The NY State Court ruled, among other things, that the question of T&G's ownership, which was at the heart of the parties' dispute in NY Action, should be determine by the NJ Probate Court and, therefore, dismissed the action, without prejudice to re-file the complaint if the matters raised in the NY Action were not fully resolved in the NJ Probate Action.

11.   In separate order issued on July 23, 2021, the NY State Court also denied a motion filed by Jacqueline to modify the January 25 Stipulation without prejudice to her ability to address the relief she sought therein in the NJ Probate Action.

12.   On July 28, 2021, Jacqueline filed an application for a temporary restraining order and preliminary injunction with the NJ Probate Court by way of Order to Show Cause seeking, among other immediate relief, (i) modification of the January 26 Order to, *inter alia*, revoke Michael's authority with respect to T&G under the January 25 Stipulation, (ii) restrain Michael from dissipating, selling, transferring, or encumbering the Property, and (iii) authorize the Administrator, essentially, to take over management of the Property. In summary, Jacqueline asserted that Michael failed to comply with the requirements of the January 26 Order and January 25 Stipulation, including by failing to provide the requisite transparency and accounting with respect to the management of T&G. She also alleged Michael was improperly using the proceeds of the Property for personal expenses. Furthermore, she alleged that in May of this

5

year, Michael obtained a $2.3 million loan secured against the Property, but apparently absconded with certain proceeds and could not and would not fully account for the proceeds.

13. On August 10, 2021 (the "**August 10 Hearing**"),[3] the NJ Probate Court held conducted oral argument and made rulings and findings with respect to Jacqueline's application.[4] Among other relevant findings and conclusions, at the August 10 Hearing, the NJ Probate Court ruled, based on the record before it, that:

> This Court is extraordinarily concerned with respect to the management of this building and with respect to the mortgage proceeds that have been obtained. The stipulation entered into by the parties in January, on January 25, 2021, was not a right of either party, but, rather, an agreement by the parties to deal with the New York City property subject to certain conditions being met; in particular, the providing of an accounting with regard to the funds and disclosure with respect to the mortgage loan proceeds. . . .
>
> This Court has determined that Jacqueline has met her burden with respect to the TRO and ***to require that the control of the property and the entity be turned over to Mr. Repetto.*** The Court has reviewed the bank statements as well as the monthly accountings and finds that the TRO is needed in order to preserve the assets of [T&G] and prevent harm to this property. The monthly accountings indeed lack sufficient detail and itemization. The amounts do not match the credits. See exhibits attached to the certification. . . .
>
> In addition, the Court is unable to find or glean any payments towards building supplies, management fees or insurance with respect to the property. The Court for the first time heard this afternoon that Mr. Crane himself was taking a management fee with respect to this matter. There is simply no record with regard to an overwhelming majority of the transactions alluded to in Mr. Crane's accounting. As I indicated, the statements, the bank statements reflect in excess of $100,000 for the payment of attorney's fees both in this action and other actions.
>
> ***As such, the Court has determined that Jacqueline has demonstrated that she will suffer immediate and irreparable harm if Michael is permitted to continue***

---

[3] A true and correct copy of the transcript of the August 10 Hearing (the "**August 10 Transcript**") is attached hereto as **Exhibit A**.

[4] Although no opposition was filed by Michael, Judge DeLuca allowed his counsel to orally oppose the application, even though Michael's pleadings in the NJ Probate Action have been stricken "as a result of his failure to comply with not one but two prior orders of [the NJ Probate Court] with regard to inspection of certain property." (August 10 Tr. at 19:22 – 20:4).

6

40000/0674-41409456v3

*as manager of [T&G] and to exert control over [T&G] and the New York City property*.

(August 10 Tr. at 25:13 – 27:1) (emphases added).

14. Furthermore, with respect to the mortgage on the Property, the NJ Probate Court found:

> Our courts have found that preliminary injunctive relief is appropriate where the subject matter of the dispute is at risk of depletion or destruction. That includes the mortgage proceeds of some $2.333 million. The Court is advised that approximately a half a million dollars was used to pay off the first mortgage . . . When asked a relatively simple question, where are the loan proceeds, the answer from the [defendant's counsel] is deafening; I don't know. . . .
>
> Where here a party is insistent on pursuing a course of action which is, in this Court's view, deleterious to the heart of the dispute, restraints are a necessary remedy. The Court finds that those restraints are necessary to prevent immediate and irreparable harm should Michael be permitted to continue . . . to use the funds of [T&G] for his own benefit while failing to adequately account for his activities.

(August 10 Tr. at 27:19 – 28:16).

15. Accordingly, the NJ Probate Court determined that:

> *Michael Crane should no longer act on behalf of [T&G] and can no longer manage the New York City property. Mr. Repetto shall take control, is directed to take control of [T&G] and the New York City property, including all accounts, and collect all rents paid by the tenants*. Mr. Repetto shall facilitate the payment of all real estate taxes and shall confirm that the New York City property is in fact insured.
>
> *Michael Crane is no longer to access any account affiliated with [T&G] and/or the New York City property and shall turn over those accounts and all information related to those accounts no later than August 12th, 2021, at 12 noon*.
>
> *Further, Mr. Crane is to provide a detailed and thorough accounting of the transactions undertaken by him since January 1, [2021] pursuant to the terms of the January 25th order. Mr. Crane shall . . . provide that accounting to Jacqueline Crane's counsel and Mr. Repetto within 15 days of today's date*.
>
> Finally, Mr. Repetto is directed and authorized to communicate with the mortgage lender, who I understand to be Kenden, LLC, or anyone else involved in that transaction, including but not limited to the title company which is identified in the papers . . . to determine the amount of the loan, how the loan was disbursed, and if Kenden or anyone else is holding on to those proceeds. . . .

7

> To the extent any funds from the mortgage loan remain un-disbursed, Michael Crane is restrained from accessing or using such funds for any purpose whatsoever. And those funds shall be turned over to Mr. Repetto, as I indicated, no later than August 12, 2021, at 12 noon.

(August 10 Tr. at 30:12 – 32:5) (emphases added).

16. On August 11, 2021, the NJ Probate Court issued an *Order to Show Cause with Temporary Restraints* (the "**August 11 Order**") further memorializing its rulings from the August 10 Hearing.[5] Among other provisions, the August 11 Order expressly (i) provides the Administrator with the authority "to employ agents/representatives for the purpose of managing and maintaining the Property and preserving [T&G];" (August 11 Order at ¶ G), (ii) directs the Administrator "to contact tenants at the Property and direct them to make rental payment into a designated financial account control by the Mr. Repetto;" (*Id.* at ¶ E); (iii) restrains Michael from "communicating with any tenants or vendors of or related to the Property except as directed by Mr. Repetto;" (*Id.* at ¶ B); and (iv) requires Michael to provide a detailed accounting and turn over all funds related to the Property to the Administrator by August 12, 2012. (*Id.* at ¶ H).

17. As of the date of this filing, Michael has failed to comply with any of the NJ Probate Court's directives in the August 11 Order and rulings at the August 10 Hearing. The Administrator has not received any documents, information, or funds from Michael whatsoever, all of which were due by August 12, 2021.

18. Instead of complying with the NJ Probate Court's orders, Michael evidently opted to engage bankruptcy counsel for the Debtor, and on August 18, 2021, purported to authorize and direct the Debtor's filing of a chapter 11 petition in this Court (the "**Chapter 11 Petition**"). On August 23, 2021 (two days ago), the Debtor (through its purported bankruptcy counsel and presumptively at Michael's direction based on his purported authority over the Debtor), filed the

---

[5] A copy of the August 11 Order is attached hereto as **Exhibit B**.

8

instant Motion requesting that this Court enter, on an emergency basis and expedited notice, an order authorizing him to manage the Debtor's cash in direct violation and contradiction of NJ Probate Court's pending orders.

19. In a remarkable lack of candor and disclosure to the Court, there is no mention of any of the NJ Probate Court's orders or any factual discussion regarding the pending disputes over the Debtor's ownership and management of its Property in the Motion, its supporting affidavit, or any of the pleadings filed in support of the Chapter 11 Petition.[6]

## **OBJECTION**

20. The Administrator objects to the Motion, and requests that the Court deny any interim relief, for a number of reasons, including, but not limited to:

21. *First*, the Motion (and indeed the chapter 11 case) amounts to an unauthorized filing that is not properly before this Court. Pursuant to the August 11 Order and related rulings by the NJ Probate Court at the August 10 Hearing, Michael lacks authority and is enjoined from acting on the Debtor's behalf and managing its Property. Rather, pursuant to the NJ Probate Court's directives, the Administrator is the only individual with authority and standing to act on the Debtor's behalf and manage its Property. The Administrator never authorized the commencement of this case or the filing of the Motion. The Court, thus, should not entertain the Motion until threshold issues with respect to the Debtor's management and control are resolved, following proper notice and record.

22. *Second*, the Chapter 11 Petition and Motion were a knowing and intentional violation of the NJ Probate Court's orders and amount to an unauthorized collateral attack. The

---

[6] On August 20, 2021, Michael submitted an Affidavit pursuant to Local Bankruptcy Rule 1007-2 [Docket No. 4] (the "**First Day Affidavit**"), a copy of which is attached hereto as **Exhibit C** for the Court's ease of reference.

9

Court should not countenance Michael's conduct by granting him authority – on three days' notice – to violate the NJ Probate Court's orders with respect to a suspect chapter 11 filing. The Administrator intends to pursue the appropriate course for this chapter 11 case on the Debtor's behalf, including potential voluntary dismissal, upon obtaining any necessary judicial confirmation regarding his authority over the Debtor's management and affairs.

23. *Third*, the Motion fails to make the necessary showing regarding the need for emergency interim relief, beyond the insufficient, conclusory assertion that "the Debtor has an emergent need to use funds to operate its business." (Motion at ¶ 13). There is also a budget attached as Exhibit C to the Motion listing purported expenses, but without any due dates.

24. *Fourth*, for all the reasons found and determined by the NJ Probate Court at the August 10 Hearing, Michael should not be permitted to manage any of the Debtor's cash or its Property. The Administrator has very serious concerns and objections in this regard. None of those concerns are ameliorated, but are only exacerbated, by the limited and inconsistent information disclosed in the Debtor's Chapter 11 Petition and related filings. By way of just one example, the bankruptcy filings still fail to shed any light on the disposition of the proceeds of the purported approximately $2.33 million[7] mortgage loan taken against the Debtor's Property in May 2021 (the "**Kenden Mortgage**"). The Administrator is advised that approximately $500,000 of the proceeds was used to payoff the existing secured indebtedness on the property. Assuming that is true, that leaves approximately $1.83 million accounted for. According to the schedules attached to the Chapter 11 Petition, the Debtor has (a) approximately $16,000 in cash and (b) made a loan to Michael in the amount of $900,000, which accounts for substantially all

---

[7] The Motion indicates that the balance of the mortgage loan is approximately $2.4 million. Furthermore, the Motion attaches, as Exhibit B, a mortgage document which states that it was issued to secured indebtedness in the amount of $1,899,571.11. The actual amount of loaned and outstanding unclear.

10

the Debtor's personal assets. The filings provide no other detail regarding the $900k insider loan, including when and why it was issued and where the proceeds for the loan came from (presumably the Kenden loan).

25. Further, the Motion and affidavit filed by Michael in support thereof (the "**Crane Affidavit**") do not provide the missing details regarding the Kenden Mortgage and its proceeds. The Motion merely represents that the outstanding balance of the loan is approximately $2.4 million and is current; it fails to disclose the amount of the original advance, how the proceeds were used, and how much is remaining, if any. The Crane Affidavit merely states that the Kenden Mortgage "was in effect a consolidation of prior outstanding secured debt," (Crane Affidavit at ¶ 5), without any other detail.

26. *Fifth*, it far from clear at this time that the stipulations and admissions in the proposed Order regarding the validity of the Kenden Mortgage, or the proposed adequate protection package, are warranted or appropriate. The Administrator remains very much in the dark and must investigate the propriety of the Kenden Mortgage, the disposition of any proceeds, and the extent and validity of the Kenden's purported liens.

*[The remainder of this page is intentionally blank].*

## CONCLUSION

For all the foregoing reasons and others, the Administrator respectfully submits that the Motion should be denied.

Dated: August 25, 2021
       New York, New York

Respectfully Submitted,

**COLE SCHOTZ P.C.**

By: */s/ Michael D. Sirota*
    Michael D. Sirota
    Mark Tsukerman
    1325 Avenue of the Americas, 19th Floor
    New York, New York 10019
    Telephone: (212) 752-8000

    *Counsel David M. Repetto, as Court Appointed Administrator of the Estate of Rhoda Crane*